EXHIBIT A

B 10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT Western | DISTRICT OF Kentucky | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor:<br>ROBERT G HUMPHREY | Case Number:<br>1432066 | |
|---|---|---|

NOTE: Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing.
You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.

Name of Creditor (the person or other entity to whom the debtor owes money or property):
SPRINGLEAF HOME EQUITY, INC.
AMERICAN GENERAL HOME EQUITY, INC.

**COURT USE ONLY**

| Name and address where notices should be sent:<br>Springleaf Financial<br>PO BOX 3251<br>Evansville, IN 47731-3251<br><br>Telephone number: 800-266-9800<br>e-mail: CBP@SPRINGLEAF.COM | ☐ Check this box if this claim amends a previously filed claim.<br><br>**Court Claim Number:**<br>_____<br>(If known)<br><br>Filed on: _____ |
|---|---|

| Name and address where payment should be sent (if different from above):<br><br><br><br>Telephone number:                  email: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars. |
|---|---|

**1. Amount of Claim as of Date Case Filed:** $ 122887.49

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** _____ Money Loaned _____ (See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor:<br>█████ | 3a. Debtor may have scheduled account as:<br>_____<br>(See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br>N/A<br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim (See instruction #4)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:
$ 3799.11

Nature of property or right of setoff: ☒ Real Estate   ☐ Motor Vehicle   ☐ Other

Describe: 3928 SOUTHERN PRKY, LOUISVILLE, KY

Basis for perfection: see attached

Value of Property: $ 180000.00

Amount of Secured Claim: $ 122887.49

Annual Interest Rate: 8.00 % ☒ Fixed or ☐ Variable
(when case was filed)

Amount Unsecured: $ 0.00

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier - 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507 (a)(5).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. § 507 (a)(___).

Amount entitled to priority:
$ _____

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B 10 (Official Form 10) (04/13)

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. (See instruction #7, and the definition of "**redacted**".)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

---

**8. Signature:** (See instruction #8)
Check the appropriate box.

[X] I am the creditor.     [ ] I am the creditor's authorized agent.     [ ] I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)     [ ] I am a guarantor, surety, indorser, or other co-debtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: HEIDI R. HALE

Title: Bankruptcy Specialist

Company: Springleaf Financial

Address and telephone number (if different from notice address above):

_____

_____     /S/ HEIDI R. HALE _____    09/02/14

                                                         (Signature)                                   (Date)

Telephone number:          email:

---

**Penalty for presenting fraudulent claim:** Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

### INSTRUCTIONS FOR PROOF OF CLAIM FORM

The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. (Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

B 10 (Official Form 10) (04/13)

—————DEFINITIONS—————

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

—————INFORMATION—————

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court.

## Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim.  See Bankruptcy Rule 3001( C )( 2 )

Name of Debtor:    Robert Humphrey

Case Number:    14-32066

Name of Creditor:    SPRINGLEAF HOME EQUITY, INC. FKA AMERICAN GENERAL HOME EQUITY, INC.

Last four digits of any numl use to identify the debtor's

---

### Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

1.  Principal due    $ 121,892.34

2.  Interest due

| | Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount | |
|---|---|---|---|---|---|
| | 8.00% | 3/31/2014 | 5/29/2014 | $ | 774.77 |
| | | | | $ | - |
| | | | | $ | - |
| | | Total interest due as of petition date | | $ | 774.77 |

Copy total here    $    774.77

3.  Total principal and interest due    $ 122,667.11

---

### Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges incurred in connection with the claim as of the petition date (included in the Amount of Claim listed on Item 1 on the Proof of Claim form).

| Description | Dates incurred | | | Amount | |
|---|---|---|---|---|---|
| Late Charges | 2/18/2014 | to | 5/29/2014 | $ | - |
| Non-Sufficient funds (NSF) fees | 9/18/2006 | to | 5/29/2014 | $ | 60.00 |
| Attorney's fees | 2/18/2014 | to | 5/29/2014 | $ | - |
| Judgment fees | 1/0/1900 | to | 5/29/2014 | $ | - |
| Filing fees and court costs | 2/18/2014 | to | 5/29/2014 | $ | - |
| Advertisement costs | 2/18/2014 | to | 5/29/2014 | $ | - |
| Sheriff/auctioneer fees | 2/18/2014 | to | 5/29/2014 | $ | - |
| Foreclosure Fees | 2/18/2014 | to | 5/29/2014 | $ | - |
| Title costs | 2/18/2014 | to | 5/29/2014 | $ | - |
| Recording fees, Recovery/Reconvey Fees | 2/18/2014 | to | 5/29/2014 | $ | - |
| Appraisal/broker's price opinion fees | 2/18/2014 | to | 5/29/2014 | $ | - |
| Property Inspection fees | 2/18/2014 | to | 5/29/2014 | $ | - |
| * Tax advances (non-escrow) | 9/18/2006 | to | 5/29/2014 | $ | - * |
| * Insurance advances (non-escrow) | 9/18/2006 | to | 5/29/2014 | $ | - * |
| * Escrow shortage or deficiency (not included in payments due) | 9/18/2006 | to | 5/29/2014 | $ | - * |
| Property preservation expenses. Specify: _____ | 2/18/2014 | to | 5/29/2014 | $ | - |
| * Other. Specify: Forbearance Interest | 9/18/2006 | to | 5/29/2014 | $ | 160.38 * |
| * Other. Specify: Creditor Placed Insurance | 9/18/2006 | to | 5/29/2014 | $ | - * |
| Other | 9/18/2006 | to | 5/29/2014 | $ | - |
| Other | 9/18/2006 | to | 5/29/2014 | $ | - |
| Other | 9/18/2006 | to | 5/29/2014 | $ | - |
| Total Prepetition fees, expenses, and charges.  Add all of the amounts listed above. | | | | $ | 220.38 |

*NOTE: Not all amounts listed in Total from Part 2 are considered past due, and Total copied into Part 3 has been adjusted to only include the amounts allowable for arrearage(s) as of the Petition Date

Page 2

## Part 3: Statement of Amount Necessary to Cure Default as of the Petition Date

Does the installment payment amount include an escrow deposit?

X No

Yes. Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable nonbankruptcy law.

| 1. Installment payments due | Date last payment received by creditor | 4/30/2014 | | |
|---|---|---|---|---|
| | Number of installment payments due | 4 | | |
| | Current Monthly Payment | $ 1,225.94 | | |

| 2. Amount of installment payments due | | | | From Date mm/dd/yyyy | To Date mm/dd/yyyy |
|---|---|---|---|---|---|
| | Amount for First Payment Default installment(s) @ | | | | |
| | Amount for Partial Regular Monthly Installment 1 installment(s) @ $ 61.29 | $ 61.29 | 1/19/2014 to | 2/18/2014 | |
| | Amount for Ongoing Regular Monthly Installment(s) Due 3 installment(s) @ $ 1,225.94 | $ 3,677.82 | 2/19/2014 to | 5/29/2014 | |
| | Amount for After Maturity Payoff Balance installment(s) @ | | | | |
| | Amount of Increase Due to Property Tax Add On installment(s) @ | | | | |
| | Amount of Increase Due to Property Tax Add On installment(s) @ | | | | |
| | Amount of Increase Due to Property Tax Add On installment(s) @ | | | | |
| | Amount of Increase Due to Creditor Placed Insurance installment(s) @ | | | | |
| | Amount of Increase Due to Creditor Placed Insurance installment(s) @ | | | | |
| | Amount of Increase Due to Escrow Monthly Payment installment(s) @ | | | | |

**Effective 5/29/2014 the ongoing monthly mortgage payment is: $1,225.94*

| | | | | |
|---|---|---|---|---|
| Total installment payments due as of the petition date | $ 3,739.11 | | Copy total here | $ 3,739.11 |
| Add total prepetition fees, expenses, and charges | | | **Copy total from Part 2 here | $ 60.00 |

**NOTE: Not all amounts listed in Total from Part 2 are considered past due, and Total copied into Part 3 has been adjusted to only include the amounts allowable for arrearage(s) as of the Petition Date**

| | | |
|---|---|---|
| Subtract total of unapplied funds (funds received but not credited to account) | $ | - |
| Subtract amounts for which debtor is entitled to a refund | $ | - |
| Total amount necessary to cure default as of the petition date | $ | **3,799.11** |

Copy total onto Item 4
of Proof of Claim form

## Post Petition Payment(s) - Proof of Claim Attachment

|  |  |
|---:|:---|
| Name: | Robert Humphrey |
| Last 4 of Account Number: | ■ |
| Case: | 14-32066 |
| Date of Case Filing | 5/29/2014 |

| Payments received since Date Case Filed | |
|:---|:---|
| Date Payment Received | Amount of Payment Received |
| 05/30/14 | $1,287.23 |
| 07/02/14 | $1,287.23 |
| 08/01/14 | $ 1,287.23 |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

**LOAN AGREEMENT AND DISCLOSURE STATEMENT**

**AMERICAN**
**GENERAL**
FINANCIAL SERVICES

| DATE   09/18/06 | ACCOUNT NUMBER ▉▉▉▉▉ | TYPE OF LOAN (Alpha) F00 |
|---|---|---|

**LENDER/SECURED PARTY NAME AND ADDRESS ("Lender")** | **LENDER'S TELEPHONE NUMBER** 502-491-4422

AMERICAN GENERAL HOME EQUITY, INC.
STONY BROOK SHPG CTR
9104 TAYLORSVILLE RD
LOUISVILLE, KY 40299-1752

**BORROWER(S) NAME AND ADDRESS ("I","We")**

ROBERT G HUMPHREY
4214 TAYLOR BLVD 1
LOUISVILLE, KY 40215

I will read this entire Loan Agreement and Disclosure Statement ("Agreement") and all related documents carefully. If I have any questions, I will ask them before I sign any of these documents. By signing, I am indicating my agreement to the statements, promises, terms, and conditions contained in the documents I sign.

## TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of my credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost me. | AMOUNT FINANCED<br>The amount of credit provided to me or on my behalf. | TOTAL OF PAYMENTS<br>The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 8.49 % | $   152876.36 | $   141349.24 | $   294225.60 |

My Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 240 | $ 1225.94 | monthly beginning 10/18/06 |
| | | |

LATE CHARGE: [X] If any payment is not paid in full within ___7___ days after its due date, I will be charged ___5.00___% of the _entire_ amount of the payment, but not more than $ _N/A_ or less than $ _10.00_. **You will pay a late charge only if 1/2 or more of the payment is late.**

[ ] If any payment is not paid in full within _____ days after its due date, I will be charged $ _____ if the entire scheduled payment exceeds $ _____ or $ _____ if the entire scheduled payment is $ _____ or less.

PREPAYMENT: If I pay off early:

[X] I may   [ ] I will not   have to pay a penalty or minimum charge.

[ ] I may   [X] I will not   get a refund or credit of part of the finance charge.

SECURITY: I am giving Lender a security interest in:

[X] Real estate located at: **3928 SOUTHERN PRKY   AND   4218 TAYLOR BLVD**
**LOUISVILLE, KY 40214        LOUISVILLE, KY  40215**

[ ] Motor Vehicles

| Year | Make | Model | Vehicle Identification No. |
|---|---|---|---|
| | | | |
| | | | |

[ ] Other Assets

| Other Assets Description |
|---|
| |

[ ] Household items described on the Personal Property Appraisal Form, which I have signed and which has been delivered to me with this Agreement.

ASSUMPTION: Someone buying my home, if it secures this loan, may not assume the remainder of this loan on the original terms unless approved by Lender.

[ ] My loan contains a variable-rate feature. Disclosures about the variable-rate feature have been provided to me earlier.

See the remainder of this Agreement for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties, if any.

## THIS AGREEMENT IS SUBJECT TO THE FEDERAL ARBITRATION ACT.

By signing below, I acknowledge receipt of a copy of this Federal Disclosure Statement.

_Robert Humphrey_
*Borrower

_____
Co-Borrower

## SEE REVERSE SIDE FOR ADDITIONAL DISCLOSURES

UNAA91 (01-15-06) Agreement (1-2)                    Page 1

## ITEMIZATION OF AMOUNT FINANCEL

Amounts paid to others on my behalf

| # | Amount | Description | Paid To |
|---|--------|-------------|---------|
| 1. | $ NONE | | PAID TO |
| 2. | $ NONE | | PAID TO |
| 3. | $ NONE | | PAID TO |
| 4. | $ NONE | | PAID TO |
| 5. | $ NONE | | PAID TO |
| 6. | $ 270.00 | Title Examination Fee | PAID TO GUARDIAN TITLE CORP |
| 7. | $ NONE | | PAID TO |
| 8. | $ 350.00 | Appraisal Fee | PAID TO FIRST TITLE CO |
| 9. | $ NONE | | PAID TO |
| 10. | $ NONE | | PAID TO |
| 11. | $ NONE | | PAID TO |
| 12. | $ NONE | | PAID TO |
| 13. | $ 326.55 | Title Insurance Fee | PAID TO GUARDIAN TITLE CORP |
| 14. | $ NONE | | PAID TO |
| 15. | $ NONE | | PAID TO |
| 16. | $ 143.00 | Recording/Releasing Fees RE | PAID TO GOVERNMENT AGENCY |
| 17. | $ NONE | | PAID TO |
| 18. | $ NONE | | PAID TO |
| 19. | $ NONE | | PAID TO |
| 20. | $ NONE | | PAID TO |
| 21. | $ 48259.69 | | PAID TO ROBERT G HUMPHREY AND AMERICAN GENERAL |
| 22. | $ 92000.00 | | PAID TO ROBERT G HUMPHREY AND GUARDIAN TITLE |
| 23. | $ | | PAID TO |
| 24. | $ | | PAID TO |
| 25. | $ | | PAID TO |
| 26. | $ | | PAID TO |
| 27. | $ | | PAID TO |
| 28. | $ | | PAID TO |
| 29. | $ | | PAID TO |
| 30. | $ | | PAID TO |
| 31. | $ | | PAID TO |
| 32. | $ | | PAID TO |
| 33. | $ | | PAID TO |
| 34. | $ | | PAID TO |
| 35. | $ | | PAID TO |
| 36. | $ | | PAID TO |
| 37. | $ | | PAID TO |
| 38. | $ | | PAID TO |
| 39. | $ | | PAID TO |
| 40. | $ | | PAID TO |
| 41. | $ | | PAID TO |
| 42. | $ | | PAID TO |
| 43. | $ | | PAID TO |
| 44. | $ | | PAID TO |
| 45. | $ | | PAID TO |

Amount Paid on Prior Account with Lender

| # | Amount | | |
|---|--------|---|---|
| 46. | $ NONE | | |

Amounts Paid to me

| # | Amount | | Paid To |
|---|--------|---|---------|
| 47. | $ | | PAID TO |
| 48. | $ | | PAID TO |
| 49. | $ | | PAID TO |
| 50. | $ | | PAID TO |
| 51. | $ | | PAID TO |
| 52. | $ | | PAID TO |
| 53. | $ | | PAID TO |
| 54. | $ | | PAID TO |
| 55. | $ | | PAID TO |
| 56. | $ | | PAID TO |

$ __141349.24__ Amount Financed (Sum of lines 1 - 56)

$ ____5219.00__ Prepaid Finance Charges (itemized below)

## PREPAID FINANCE CHARGES

| # | Amount | Description | Paid To |
|---|--------|-------------|---------|
| 1. | $ 4600.00 | Points | PAID TO LENDER |
| 2. | $ NONE | | PAID TO |
| 3. | $ 560.00 | Broker's Fee | PAID TO GUARDIAN TITLE CORP |
| 4. | $ NONE | | PAID TO |
| 5. | $ NONE | | PAID TO |
| 6. | $ NONE | | PAID TO |
| 7. | $ NONE | | PAID TO |
| 8. | $ NONE | | PAID TO |
| 9. | $ NONE | | PAID TO |
| 10. | $ NONE | | PAID TO |
| 11. | $ NONE | | PAID TO |
| 12. | $ NONE | | PAID TO |
| 13. | $ NONE | | PAID TO |
| 14. | $ NONE | | PAID TO |
| 15. | $ 59.00 | Tax Service Fee | PAID TO ZC Sterling |

**SEE NEXT PAGE FOR IMPORTANT INFORMATION**

## ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL

**DESCRIPTION OF ARBITRATION.** Arbitration is a method of resolving claims and disputes between parties without having to file a lawsuit in court. It is a process in which both sides present their case to a neutral third person--the arbitrator--instead of a judge or jury, to resolve the dispute. **TO THE FULLEST EXTENT PERMITTED BY LAW, BY SIGNING THIS AGREEMENT, BOTH LENDER AND I ARE VOLUNTARILY WAIVING ANY RIGHT TO A JURY TRIAL OR JUDGE TRIAL OF ALL CLAIMS AND DISPUTES COVERED BY THIS ARBITRATION AGREEMENT ("this Arbitration Agreement").**

**CLAIMS AND DISPUTES COVERED.** Except for those claims mentioned below under the heading "MATTERS NOT COVERED BY ARBITRATION," Lender and I agree that either party may elect to resolve by BINDING ARBITRATION all claims and disputes between us ("Covered Claims"). This includes, but is not limited to, all claims and disputes arising out of, in connection with, or relating to:

My loan from Lender today; any previous loan from Lender and any previous retail credit agreement ("Retail Contract") whether open or closed-end, assigned to Lender; all documents, promotions, advertising, actions, or omissions relating to this or any previous loan or Retail Contract made by or assigned to Lender; any insurance product, service contract, or warranty purchased in connection with this or any previous loan or Retail Contract made by or assigned to Lender; any product or service offered to Lender's customers with any assistance or involvement by Lender; whether the claim or dispute must be arbitrated; the validity and enforceability of this Arbitration Agreement and the Agreement, my understanding of them, or any defenses as to the validity and enforceability of the Agreement and this Arbitration Agreement; any negotiations between Lender and me; the closing, servicing, collecting, or enforcement of any transaction covered by this Agreement; any allegation of fraud or misrepresentation; any claim based on or arising under any federal, state, or local law, statute, regulation, ordinance, or rule; any claim based on state or federal property laws; any claim based on the improper disclosure of any information protected under state or federal consumer privacy laws; any claim or dispute based on any alleged tort (wrong), including intentional torts; and any claim for injunctive, declaratory, or equitable relief.

**COVERED CLAIMS AGAINST THIRD PARTIES.** This Arbitration Agreement also covers any claim or dispute between me and any of Lender's employees, officers, agents, or directors; any of its affiliate corporations; any entities which provided insurance in connection with this or any previous transactions between me and Lender, any third parties that assigned Retail Contracts or other agreements to Lender; and any of the employees, officers, agents, or directors of such affiliates or third parties. Affiliate corporations are Lender's parent corporations, subsidiary corporations, and sister corporations. Some of Lender's affiliates are American General Finance Corporation, American General Financial Services, Inc., Merit Life Insurance Co., and Yosemite Insurance Company. In addition, if Lender becomes a party in any lawsuit that I have with any third party, whether through intervention by Lender or by motion made by me or any third party, all claims in that lawsuit between me and the third party will be subject to binding arbitration under this Agreement, provided that the third party is required to agree to resolve such claims by arbitration.

**MATTERS NOT COVERED BY ARBITRATION.** I agree that Lender does not have to initiate arbitration before exercising lawful self-help remedies or judicial remedies of garnishment, repossession, replevin, or foreclosure, but instead may proceed in court for those judicial remedies (an "Excluded Collateral Lawsuit"). I may assert in court any defenses I may have to Lender's claims in such a lawsuit, but any claim or counter claim for rescission or damages I may have arising out of, relating to, or in connection with Lender's exercise of those remedies must be arbitrated. Instead of pursuing arbitration, either Lender or I also have the option to bring a lawsuit in court to seek to recover an amount which does not exceed the total sum of $5,000.00 (including costs and attorneys' fees), provided that no relief other than such recovery is requested in such lawsuit (an "Excluded Damages Lawsuit"). If an Excluded Damages Lawsuit is filed, the other party cannot require that the claims in that lawsuit be arbitrated. An Excluded Damages Lawsuit can be brought to recover money for myself or Lender only, not for any class or group of persons having similar claims. If such an Excluded Damages Lawsuit is filed by me or Lender, and any party to that lawsuit files an amendment, counterclaim, cross-claim, or third-party claim seeking to recover more than $5,000, then that claim, counterclaim, cross-claim, or third party claim must be arbitrated in accordance with the procedures set forth in this Arbitration Agreement. Neither I nor Lender shall be deemed to have waived any arbitration rights by the fact of having exercised any self-help or judicial remedies of garnishment, repossession, replevin, or foreclosure or by having filed any claims in court seeking to recover a total sum of $5,000.00 or less.

**ARBITRATION RULES AND PROCEDURES.**

**A.    ARBITRATION FORUM AND RULES.** The arbitration will be conducted under the rules and procedures of the National Arbitration Forum ("NAF") that are in effect at the time arbitration is started and under the rules set forth in this Arbitration Agreement. At my request, Lender will provide me a copy of the NAF Rules. If I lose my copy, Lender will give me another one if I ask for it. I may also obtain a copy of those rules by calling NAF at 1-800-474-2371 or by reviewing NAF's web-site at www.arb-forum.com. In the event that NAF is either unable, unwilling, or deemed not appropriate by a court to resolve a Covered Claim, or I object to the NAF for good cause, then Lender and I agree to submit all disputes to the American Arbitration Association ("AAA") for proceedings conducted pursuant to the AAA's Commercial Rules and Expedited Procedures. If there is a conflict between the rules of the NAF (or the AAA) and this Arbitration Agreement, this Arbitration Agreement will govern.

**B.    SELECTION OF ARBITRATOR.** NAF maintains lists of approved arbitrators. NAF will provide Lender and me each a list of seven (7) possible arbitrators. Lender and I will each have an opportunity to strike three (3) persons from that list. I will make the first strike, and Lender and I will alternate in making strikes after that. After the last strike, the remaining person shall then serve as arbitrator.

**C.    STARTING ARBITRATION.** Before I start arbitration, I agree to write to Lender at the address shown for Lender in this Agreement, unless I have received notice of a new address for Lender, and I agree to give Lender a reasonable opportunity to respond and resolve any errors. In my letter, I will give the following information: my name and account number, a description of my claim or dispute and why I believe Lender has made an error, the dollar amount of my claim or dispute, and a description of any other information I need from Lender. Before Lender starts an arbitration, it must write to me at my billing address; describe its claim or dispute; state the dollar amount of its claim or dispute; and give me a reasonable opportunity to resolve the claim or dispute. If a Covered Claim cannot be resolved in the foregoing manner, either Lender or I can start arbitration. Except as described in Paragraph E below, nothing in this Arbitration Agreement shall limit the arbitrator's ability to enforce any of my rights or impose any remedies available to me under any applicable consumer protection laws or regulations. To start an arbitration, Lender and I agree to follow the rules of the NAF (or, if applicable, the rules of the AAA).

**D.    COSTS OF ARBITRATION.** The NAF and AAA charge certain fees in connection with arbitration proceedings they conduct. I may have to bear some of these fees; however, if I am not able to pay such fees or think they are too high, Lender will consider any reasonable request to bear the cost. Lender will also bear any costs Lender is required to bear by law or the terms of any other agreement with me. Each party will also pay for its own costs, including fees for attorneys, experts, and witnesses, unless otherwise provided by law or by the terms of any other agreement between the parties, to the extent permitted by applicable law.

**E.    CONDUCT OF PROCEEDINGS.** In conducting the arbitration proceedings, the arbitrator shall be bound by the Federal Rules of Evidence; however, the federal or any state rules of procedure or discovery shall not bind the arbitrator. The arbitrator's findings, reasoning, decision, and award shall be set forth in writing and shall be based upon and be consistent with the law of the jurisdiction that applies to the loan or other agreement between Lender and me. The arbitrator must abide by all applicable laws protecting the attorney-client privilege, the attorney work product doctrine, or any other applicable privileges.

**SEE REVERSE SIDE FOR ADDITIONAL ARBITRATION TERMS**

ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL    (con'd)

**F.    ENFORCEMENT AND APPEAL OF DECISION.** The decision and judgment of the arbitrator shall be final, binding, and enforceable in any court having jurisdiction over the parties and the dispute; however, for Covered Claims involving more than $100,000, any party may appeal the award, at its own cost, except as provided by law, to a three-arbitrator panel appointed by the NAF or AAA, as the case may be. That panel will reconsider from the start any aspect of the initial award that either party asserts was incorrectly decided. The decision of the panel shall be by majority vote and shall be final and binding, except as provided below. The arbitrator's (or panel's) findings, decision, and award shall be subject to judicial review on the grounds set forth in 9 U.S.C. § 10, as well as on the grounds that the findings, decision, and award are manifestly inconsistent with the terms of this Arbitration Agreement and any applicable laws or rules.

**G.    LIMITATION OF PROCEEDINGS.** Lender and I further agree that the arbitrator will be restricted to resolving only the claims, disputes, or controversies between Lender and me and the other parties covered by this particular Agreement (and not by similar agreements). Arbitration is not available and shall not be conducted on a class-wide basis or consolidated with other claims or demands of other persons. I agree not to participate in a representative capacity or as a member of any class of claimants pertaining to any Covered Claim.

**H.    LIMITATION OF ARBITRATOR'S AUTHORITY.** The arbitrator may award punitive damages only under circumstances where a court of competent jurisdiction could award such damages. In awarding any punitive damages, the arbitrator must abide by all applicable state and federal laws regarding the amount of such damages, and the arbitrator must state the precise amount of the punitive damages award. The arbitrator must also conduct a post-award review of any punitive damages, allowing the parties the same procedural rights and using the same standards and guidelines that would apply in a judicial proceeding in the state where the arbitration is conducted. The arbitrator may award injunctive relief that would benefit either Lender or me in connection with resolving a Covered Claim between Lender and me, but the arbitrator may not award injunctive relief for the benefit of other persons or groups of persons who are not named parties to the arbitration proceeding.

**I.    LOCATION OF THE ARBITRATION.** The arbitration will take place in the county where I live unless Lender and I agree to another location. If Lender and I agree, all or a portion of the arbitration proceedings can be conducted by telephone conference.

**J.    ENFORCEMENT IN COURT.** Nothing in this Arbitration Agreement shall prevent either Lender or me from enforcing all rights under this Arbitration Agreement if a Covered Claim is filed in court.

**K.    FORUM SELECTION CLAUSE.** If either Lender or I need to file a lawsuit to enforce this Arbitration Agreement or to pursue claims that either may or may not be arbitratable under this Arbitration Agreement, the exclusive venue for that suit will be a state court located in the county where Lender's office is located or where I sign this Agreement, or in the federal court covering that county, unless the governing law requires suit to be filed in another location. Nothing in this paragraph shall prevent either Lender or me from enforcing its or my rights under this Arbitration Agreement if the Covered Claim is filed in court.

**ADDITIONAL INFORMATION.** I may obtain additional information about arbitration by contacting the National Arbitration Forum, Inc., at P.O. Box 50191, Minneapolis, Minnesota 55405. (800-474-2371 (Telephone)). (651-631-0802 (Fax)). www.arb-forum.com (e-mail).

**OTHER IMPORTANT AGREEMENTS.** Lender and I agree:

(a)    This Arbitration Agreement does not affect any statute of limitations or claims of privilege recognized at law.

(b)    The loan and insurance transactions between Lender and me and other applicable parties are transactions involving interstate commerce, using funds and other resources from outside the state.

(c)    The Federal Arbitration Act applies to and governs this Agreement. State arbitration laws and procedures shall not apply to this Agreement.

(d)    This Agreement applies to and runs to the benefit of Lender's and my assigns, successors, executors, heirs, and/or representatives.

(e)    If any term of this Arbitration Agreement is unenforceable, the remaining terms are severable and enforceable to the fullest extent permitted by law.

(f )    This Arbitration Agreement supersedes any prior arbitration agreement that may exist between Lender and me and can only be modified in writing signed by the parties.

(g)    This Arbitration Agreement applies even if my loan has been cancelled, changed, modified, refinanced, paid in full, charged off, or discharged or modified in bankruptcy.

I AGREE TO READ THIS ARBITRATION AGREEMENT CAREFULLY, BECAUSE IT LIMITS CERTAIN OF MY RIGHTS, TO THE EXTENT PERMITTED BY LAW, INCLUDING MY RIGHTS TO BRING A COURT ACTION, TO HAVE A TRIAL BY JURY, AND TO PARTICIPATE IN A CLASS ACTION OR CLASS ARBITRATION. BY SIGNING THIS AGREEMENT, I ACKNOWLEDGE THAT I HAVE READ AND RECEIVED A COPY OF THIS ARBITRATION AGREEMENT AND AGREE TO BE BOUND BY ALL OF ITS TERMS.

**SEE FOLLOWING PAGE FOR ADDITIONAL INFORMATION**

**DATE OF LOAN.** 09/18/06 (the da'  Finance Charge is scheduled to begin to acc

**CONTRACT RATE.** 8.00 % p., year, which is the agreed interest rate. If the ',...justable Rate Loan" box is checked below, this rate is subject to change as set forth therein.

**PROMISE TO PAY.** For value received, I promise to pay to the order of the Lender all amounts due under this Agreement in accordance with the Payment Schedule set forth in the Truth in Lending Disclosure set forth on page 1 of this Agreement, and with all other terms of this Agreement. If the "Adjustable Rate Loan" box is checked below, the payment amounts set forth in the Payment Schedule may change as set forth in this Agreement.

☐ **ADJUSTABLE RATE LOAN.** If this box is checked, I agree that the agreed interest rate I will pay may change on the Due Date of my _____ payment and on that same date every _____ thereafter ("the Change Date"). If there is no corresponding date in any given month, the Change Date will be the last day of the month. (For example, if my rate can change quarterly and my Change Date is January 31, my next Change Date will be April 30.) My interest rate will be based on an index. The index is the highest Prime Rate published in The Wall Street Journal's "Money Rates" table. If this index should no longer be available, Lender will choose a comparable replacement index and will inform me of the new index.

Prior to each Change Date, Lender will calculate the new agreed interest rate by taking the index as of 60 days prior to the Change Date and adding a margin of _____ percentage points. Lender will round the resulting figure down to the next lowest one-hundredth of one percent. Lender will then determine the new monthly payment amount necessary to repay my loan in full on the due date for the final payment.

My interest rate will never increase or decrease on any single Change Date by more than _____ percentage points from the agreed rate of interest in effect immediately preceding the Change Date. Any rate change not implemented as a result of this limitation may be carried over to the next Change Date. My interest rate will never increase by more than eight percentage points (for first mortgage loans) or ten percentage points (for subordinate mortgage loans) over the initial Prime Rate, and in no event will ever be greater than _____ %, and will never be less than _____%.

The new agreed interest rate will be effective as of the Change Date. The new monthly payment will be effective as of the next regularly scheduled due date subsequent to the Change Date. Lender will send me notice of all rate and payment changes as required by law.

**SECURITY AGREEMENT.** If any type of personal property (property other than real estate ("real property")) is disclosed in the "Security" section of the Truth in Lending Disclosures, to secure all amounts due or which become due under this Agreement and my performance of all other terms of this Agreement, I grant Lender a security interest under the Uniform Commercial Code or other applicable law in: (1) the property identified in the "Security" disclosure of the Truth in Lending Disclosures on page 1 of this Agreement; (2) any substitutions or replacements of that property; and (3) the proceeds and products of that property (collectively referred to as the "Collateral"). I also grant Lender a security interest in any unearned premiums from any insurance I have elected and purchased through Lender in connection with this transaction which protects the loan account or Collateral (including, but not limited to, voluntary credit and personal property insurance). Lender's security interest shall remain in effect until I have paid in full all amounts due under this Agreement and any modifications, renewals, and extensions thereof. Notwithstanding any other provision of this Agreement, Lender is not granted, and will not have, a nonpurchase money security interest in household goods, to the extent such a security interest would be prohibited by applicable law. I authorize Lender to sign and file financing statements covering the Collateral without my signature. I authorize Lender to file a copy of this Agreement as a financing statement when appropriate. If real property is disclosed in the "Security" section of the Truth in Lending Disclosures, I am signing a mortgage or deed of trust covering the real property at the same time that I am signing this Agreement.

**JOINT BORROWERS.** If more than one Borrower is named above, all Borrowers agree that they are jointly and severally liable and that Lender may enforce this Agreement against all or any of them, but not in a combined amount exceeding the amount due.

**CO-MAKERS (also referred to as CO-SIGNER(S)).** If I am signing this Agreement as a Co-Maker, I understand that I am equally responsible with the Borrower(s). I agree that Lender may pursue me or any Maker if this Agreement is in default. Unless required by law, Lender will not notify me if: (a) this loan is in default; (b) Lender agrees to accept different payment terms; (c) Lender releases any security interest; or (d) Lender releases any Borrower(s) or Maker(s).

**CREDIT INFORMATION.** I authorize Lender to investigate my creditworthiness, including to obtain my credit report at anytime, as permitted by law.

**REQUIRED PROPERTY INSURANCE.** I agree to insure any automobiles, all terrain vehicles, snowmobiles, watercraft, other titled vehicles, large equipment, and dwellings and other structures attached to real property ("Property"), in which I have granted Lender an interest to secure my loan, against all risks of physical damage, including loss by fire and other hazards, for the term of the loan, in amounts and with deductibles approved by Lender ("Required Insurance"). Required Insurance must: (1) be issued by an insurer and have terms and conditions satisfactory to Lender; (2) name Lender as loss payee or mortgagee; (3) not permit the addition of any other loss payee or mortgagee to the insurance policy unless Lender consents in writing; (4) provide that such insurance will not be canceled or modified without at least 15 days prior written notice to the loss payee or mortgagee; and (5) not include any disclaimer of the Insurer's liability for failure to give such notice. I may purchase Required Insurance from whomever is acceptable to Lender or provide existing coverage through any insurance company or agent of my choice that is acceptable to Lender. Lender does not sell Required Insurance. I agree to provide to Lender satisfactory proof of Required Insurance. I agree to keep Required Insurance in force until all amounts I owe Lender under this Agreement are paid in full. In the event of damage to or loss of the Property, I agree to give prompt notice to Lender and the insurance carrier. If I fail to promptly notify or make proof of loss to the insurance carrier, Lender may, but is not required to, do so on my behalf. I agree Lender may use any insurance proceeds to reduce amounts I owe under this Agreement. To the extent permitted by law, I authorize Lender to adjust my losses and sign my name to any check, draft, or other papers necessary to obtain such insurance payments. If insurance proceeds paid to Lender do not pay off all amounts I owe Lender under this Agreement, I remain responsible for payment of the balance of any amounts due under this Agreement.

**LENDER PLACED INSURANCE.** If at any time I fail to buy or keep in force Required Insurance, Lender may, but is not required to, purchase Required Insurance at my expense to protect Lender's interest in the Property. I agree that Required Insurance may, but to the extent permitted by law, need not, protect my interests. The coverage purchased by Lender may not pay any claim I make. I agree that the cost of Required Insurance purchased by Lender may be much more than the cost of Required Insurance I could have obtained on my own, and I agree that the cost of such Required Insurance may, to the extent permitted by law, be added to my loan balance and accrue interest at the Contract Rate. I authorize Lender to release to third parties any information necessary to monitor the status of Required Insurance on my Property and to purchase Required Insurance required by this Agreement.

**VOLUNTARY CREDIT INSURANCE.** Lender's affiliate may provide the credit insurance that I voluntarily select. Lender and/or its affiliates expect to profit from my purchase of voluntary credit and personal property insurance, and I consent to this.

**ASSIGNMENT OF UNEARNED INSURANCE PREMIUMS AND POLICY PROCEEDS.** I, where authorized by law, hereby assign to Lender any moneys, not in excess of the unpaid balance of indebtedness which this instrument secures, which may become payable under any insurance I have elected and purchased through Lender in connection with this transaction which protects the loan account or Collateral (including, but not limited to, voluntary credit and personal property insurance), including return of unearned premiums, and direct any insurance company to make payment directly to Lender to be applied to said unpaid indebtedness and I hereby appoint Lender as my attorney-in-fact to endorse any draft, check or other papers necessary to obtain such insurance payments.

**CORRECTION; RELEASE.** During the term of this Agreement, I agree to cooperate with Lender to: (a) correct any clerical errors that were made in connection with loan documents; (b) obtain the correct amounts due to others; and (c) release all liens upon payment in full. Lender may consider any breach of this requirement as an event of default of this Agreement.

**CANCELLATION.** Prior to the distribution of loan proceeds, Lender may withdraw its approval of or commitment to make this loan if Lender reasonably believes that: (a) there are material omissions or misrepresentations in connection with my credit application; (b) there is a material, adverse change in my creditworthiness; (c) there are additional liens on the right, title, or interest of any Collateral to be used for this loan; or (d) a sale or transfer of any right, title, or interest in any Collateral to be used for this loan has or will occur that is not agreed to by the Lender.

**SEVERABILITY.** The fact that any provision of this Agreement may prove invalid or unenforceable under any law, rule, or regulation of any federal, state, or local court or governmental entity shall not affect the validity or enforceability of the remaining provisions of this Agreement.

**NO ASSUMPTION.** This Agreement shall not be eligible for assumption by any party without the express written consent of Lender.

UNATD1 (07-17-05) Agreement (5-6)                                    Page 5                                    Initials _____

**DEFAULT.** Except as prohibited by law , limited by other provisions of this Agreement, I will be in default of this Agreement if any one of the following occurs:

 A. I fail to make any payment under this Agreement when due.

 B. I fail to do anything else I have agreed to do in this Agreement.

 C. Any statement or representation I made in my credit application is untrue or incorrect.

 D. I fail to provide Lender with proof of employment, residence, insurance, or repair to credit history within three (3) business days after Lender's written request for this information.

 E. I die, become incompetent, generally fail to pay my debts as they become due, or become the subject of a voluntary or involuntary bankruptcy proceeding.

 F. Any judgment, levy, attachment, writ of garnishment, or other similar order is entered against me or the Collateral.

 G. Any police or governmental agency seizes or impounds the Collateral, if the Collateral consists of personal property, or starts forfeiture proceedings against the Collateral.

 H. If the Collateral consists of personal property, I relocate to another state without giving written notice at least 30 days before relocating.

 I. I sell, lease or otherwise encumber or dispose of the Collateral without Lender's written permission.

 J. Any other event or circumstance occurs that reasonably causes Lender to deem itself insecure or to believe that Lender's prospects for payment or realization upon the Collateral are impaired, unless prohibited by state law.

**(For Kansas residents only,** Lender believes the preceding events would significantly impair the prospect of payment, performance, or realization of Collateral. Except for a default resulting from my failure to make any payment as required by this Agreement, the burden of establishing the prospect of such significant impairment is on the Lender.)

**GENERAL REMEDIES.** If I am in default on this Agreement, Lender has, subject to any requirements of notice or right to cure or similar provisions, all of the remedies permitted by law and this Agreement, including:

 A. Lender may require me to pay Lender immediately, subject to any rebates required by law, the remaining unpaid balance of the Amount Financed, finance charges, and all other agreed charges. These amounts will accrue finance charges from the date I am required to pay Lender at the Contract Rate or lesser rate as required by applicable law, until paid in full.

 B. Lender may pay taxes, assessments, or other liens, or make repairs to the Collateral if I have not done so, but Lender is not required to do so. Upon payment by Lender, these amounts will be due immediately and will accrue finance charges from the date paid at the Contract Rate until repaid in full to Lender.

 C. If the Collateral consists of personal property, Lender may require me to make the Collateral available to Lender at a place Lender designates that is reasonably convenient to Lender and me.

 D. If the Collateral consists of personal property, Lender may immediately immobilize, disable, or take possession of the Collateral by legal process or self help, but in doing so Lender may not breach the peace or unlawfully enter onto my premises. Lender may then sell the Collateral and apply what Lender receives, as provided by law, to Lender's actual and reasonable expenses.

 E. Except when prohibited by law, I am responsible for any deficiency if the proceeds from the sale of the Collateral do not cover what I owe Lender, and Lender may sue me for those additional amounts.

 F. If the Collateral consists of real property, Lender may begin foreclosure proceedings as described in the mortgage or deed of trust granting Lender a security interest in the Collateral.

 G. Lender has the right, but not the obligation, to cancel or request termination of any voluntary credit or personal property insurance in the event of default and I hereby appoint Lender as my attorney-in-fact to cancel any such insurance in the event of default, subject to any applicable restrictions under state law. Return of any unearned premium as a result of such request for termination or cancellation will be credited to my loan account.

 H. Lender may accept late payments or partial payments even though marked "Payment in Full" (or similar language) without losing any of its rights under this Agreement, to the extent permitted by law.

By choosing any one or more of these remedies, Lender does not waive its right later to elect another remedy. By deciding not to use any remedy, Lender does not give up its right to consider it an event of default if it happens again. Lender's rights are hereunder cumulative, not exclusive.

I agree that, if any notice is required to be given to me of an intended sale or transfer of the Collateral if it is personal property, notice is reasonable if mailed to my last known address, as reflected in Lender's records, at least ten (10) days before the date of the intended sale or transfer, or such other period of time as is required by law.

I agree that, subject to my right to recover such property, Lender may take possession of personal property left in or on the Collateral securing this Agreement and taken into possession as provided above.

**WAIVER.** Unless law or this Agreement provide otherwise, I hereby waive presentment, notice and protest, and all other demands and notices in connection with the delivery, acceptance, performance, default, or endorsement of this Agreement and all suretyship defenses generally to the extent permitted by applicable law.

**NOTICES.** If required by law, Lender will provide me with notices under this Agreement, if mailed, to my last known address as reflected in Lender's records, including, but not limited to, notices of default, right to cure, and purchase of Required Insurance.

**DELAY IN ENFORCEMENT.** Lender may delay enforcing any of its rights under this Agreement without losing them.

**SAVINGS CLAUSE.** All agreements between me and Lender are expressly limited so that any interest, finance charges, loan charges, or other fees collected or to be collected from me or any person executing this Agreement shall not exceed, in the aggregate, the highest amount allowed by applicable law. If a law that applies to this Agreement and my loan is finally interpreted so that the interest, finance charges, loan charges, or other fees collected, or to be collected, in connection with this loan exceed the permitted limits, then: (a) any such interest, finance charges, loan charges, or other fees shall be reduced to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded. Lender may choose to make this refund by reducing the Principal, as defined below, that I owe under this Agreement or making a direct payment to me. To the extent permitted by law, my acceptance of any such refund shall constitute a waiver of any right of action I might have arising out of such overcharge.

The following notice applies if the proceeds of this loan will be applied in whole or substantial part to a purchase of goods from a seller who either refers consumers to the Lender or who is affiliated with the Lender by common control, contract, or business arrangement:

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

I/We acknowledge that my/our monthly scheduled payments under my/our Agreement with Lender <u>do not</u> include payments for property taxes (or special assessments), or premiums for insurance covering the property. There are <u>no</u> escrow or impound accounts under my/our Agreement.

I/We agree to make required payment(s) to the appropriate taxing authority and/or insurance provider as they are due.

**SEE FOLLOWING PAGE FOR ADDITIONAL INFORMATION** Initials _R H_ _____

**INTEREST BEARING LOAN.** I agree to pay to the order of Lender, Principal, plus interest ("finance charges") on the daily unpaid Principal balance computed at the Contract Rate, in the amounts and on or before the dates set forth in the Payment Schedule in the Truth in Lending Disclosures on page 1 hereof, plus all other fees, charges, and other amounts due under this Agreement, at Lender's address set forth in this Agreement, unless otherwise notified, until paid in full. If the "Adjustable Rate Loan" box is checked above, the Contract Rate and the monthly payment amounts may change as set forth therein. If I have not purchased credit insurance or have purchased single premium credit insurance, all payments will be applied in the following order to: (a) other charges provided for in this Agreement or otherwise allowed by law, and late charges; (b) interest; and (c) unpaid Principal. If I have purchased credit insurance that is billed on a monthly basis, all payments will be applied in the following order to: (a) other charges provided for in this Agreement or otherwise allowed by law, and late charges; (b) any past due credit insurance premiums billed on a monthly basis; (c) any past due loan payment(s); (d) currently due credit insurance premiums that are billed on a monthly basis; and (e) currently due loan payment. When applying payments to past and currently due loan payments, monies will be applied first to accrued interest with the remainder, if any, being applied to unpaid Principal. Because interest on my loan is earned daily, early payments will decrease the amount I owe, and late payments will increase that amount. The Payment Schedule assumes that I will make each payment on the day it is due; therefore, my final payment will be adjusted as appropriate to reflect any variation in the actual dates my payments are received by Lender. If any unpaid amounts remain due to Lender after my final scheduled payment due date, I agree to pay interest on these unpaid amounts, computed at the Contract Rate, until paid in full.

**PRINCIPAL.** Principal is the total of the Amount Financed, plus any Prepaid Finance Charges that I have financed.

☐ **BALLOON PAYMENT.** If checked, my last scheduled payment is larger than my regular scheduled payments ("Balloon Payment"). I agree that, unless Lender has agreed to refinance my Balloon Payment, I must pay the full amount of my Balloon Payment from my own resources or by refinancing my loan with another lender on or before the due date of my Balloon Payment.

**PREPAYMENT REFUND.** I may prepay all or any part of my loan at any time, subject to the payment of the penalty (if any) described below. The Prepaid Finance Charges are deemed by the parties to be fully earned on the Date of Loan and are not refundable, to the extent permitted by applicable law.

**PREPAYMENT PENALTY.**

☐ If checked, there will be no prepayment penalty.

☒ If checked, Lender may charge and I agree to pay a prepayment penalty equal to ___5.0_% , computed on the Principal prepaid at any time within the first _60_ months after the Date of Agreement. There will be no prepayment penalty if: (a) this loan is refinanced or consolidated by Lender or its affiliate; (b) this loan is prepaid with insurance proceeds; (c) this loan is prepaid as a result of lawsuit, foreclosure, or acceleration; (d) Lender disapproves a request for assumption and exercises its rights under a due on sale clause, and imposition of the prepayment penalty is prohibited by applicable law; or (e) this loan is prepaid more than _60_ months after the Date of Agreement.

**LATE CHARGE.** I agree to pay any late charge described in the Truth in Lending Disclosures herein.

**DISHONORED CHECK CHARGE.** If my check or other instrument given to Lender is returned unpaid for any reason, I agree to pay a dishonored check charge of the greater of $_15.00_ or the amount charged the Lender by the financial institution.

**DEFAULT COSTS.** In the event of default, I agree to pay Lender's (a) court costs, (b) reasonable attorney's fees, and (c) costs to realize on any security interest, each if and to the extent permitted by applicable law.

**GOVERNING LAW.** The laws of the State of Kentucky shall govern this Agreement, except as preempted by federal law. Federal law applies to the Contract Rate and Prepaid Finance Charges if this loan is secured by a first mortgage on real property, pursuant to 12 United States Code § 1735f-7a, as amended.

## PLEASE SEE IMPORTANT INFORMATION ON REVERSE

**ENTIRE AGREEMENT.** This Agreement contains the entire agreement of the parties with regard to the subject matter hereof, and no party hereto has relied upon any representations except such as are specifically set forth herein. This Agreement cannot be modified in any respect except by an amendment in writing signed by the parties. All notices under this Agreement shall be in writing and directed to the parties at the addresses shown at the beginning of this Agreement or to such other address as a party may specify by notice given in accordance with this paragraph.

**IF I DEFAULT AND THIS LOAN IS SECURED BY A MORTGAGE ON MY HOME, I MAY LOSE MY HOME.**

---

**BY SIGNING BELOW, I SIGNIFY THAT I HAVE READ, UNDERSTOOD, AND AGREED TO THE TERMS AND CONDITIONS OF THIS AGREEMENT, INCLUDING THE ARBITRATION AGREEMENT THAT PROVIDES, AMONG OTHER THINGS, THAT EITHER LENDER OR I MAY REQUIRE THAT CERTAIN DISPUTES BETWEEN US BE SUBMITTED TO BINDING ARBITRATION. IF LENDER OR I ELECT TO USE ARBITRATION, WE AGREE THAT WE WILL HAVE THEREBY WAIVED OUR RIGHTS TO TRIAL BY JURY OR JUDGE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THAT THE DISPUTE WILL BE DECIDED BY AN ARBITRATOR, AND THAT THE DECISION OF THE ARBITRATOR WILL BE FINAL. ARBITRATION WILL BE CONDUCTED PURSUANT TO THE RULES OF THE NATIONAL ARBITRATION FORUM, EXCEPT AS OTHERWISE PROVIDED IN THE ARBITRATION AGREEMENT.**

UNARBT (8-12-01)

---

I agree that, on or before the date on page 1 hereof ("the Date of Agreement"), I have received and read a fully completed, legible copy of this Agreement, the Truth in Lending Insurance Disclosures, the Privacy Notice, the Personal Property Appraisal Form (if applicable), and two copies of a Notice of Right to Cancel (if applicable) and agree to be bound thereby.

x_____    x_____ L.S.
Witness                                Borrower    ROBERT G HUMPHREY

x_____    x_____ L.S.
Witness                                Co-Borrower

                                       x_____ L.S.
                                       Co-Maker

                                       Print Name: _____

                                       x_____ L.S.
                                       Co-Maker

                                       Print Name: _____

## NOTE ALLONGE

THIS ENDORSEMENT IS INCORPORATED INTO AND SHALL BE DEEMED PART OF THE NOTE TO WHICH IT IS ATTACHED.

| | |
|---|---|
| Borrower 1: | ROBERT G HUMPHREY |
| Borrower 2: | |
| Date of Loan: | 9/18/2006 |
| Loan Amount: | $146,568.24 |
| Property Address: | 3928 SOUTHERN PRKY. |
| City, State, Zip: | LOUISVILLE, KY 40214 |

### *Pay to the order of:*

Without recourse

SPRINGLEAF HOME EQUITY, INC. F/K/A AMERICAN GENERAL HOME EQUITY, INC.

Stephen L. Day
Vice President

20

53

**LOAN AGREEMENT AND DISCLOSURE STATEMENT**

**AMERICAN GENERAL FINANCIAL SERVICES**

| DATE 09/18/06 | ACCOUNT NUMBER | TYPE OF LOAN (Alpha) F00 |
|---|---|---|
| LENDER/SECURED PARTY NAME AND ADDRESS ("Lender") | | LENDER'S TELEPHONE NUMBER 502-491-4422 |

LENDER/SECURED PARTY NAME AND ADDRESS ("Lender")

AMERICAN GENERAL HOME EQUITY, INC.
STONY BROOK SHPG CTR
9104 TAYLORSVILLE RD
LOUISVILLE, KY 40299-1752

BORROWER(S) NAME AND ADDRESS ("I","We")

ROBERT G HUMPHREY
4214 TAYLOR BLVD 1
LOUISVILLE, KY 40215

I will read this entire Loan Agreement and Disclosure Statement ("Agreement") and all related documents carefully. If I have any questions, I will ask them before I sign any of these documents. By signing, I am indicating my agreement to the statements, promises, terms, and conditions contained in the documents I sign.

### TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | AMOUNT FINANCED The amount of credit provided to me or on my behalf. | TOTAL OF PAYMENTS The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 8.49 % | $ 152876.36 | $ 141349.24 | $ 294225.60 |

My Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 240 | $ 1225.94 | monthly beginning 10/18/06 |

LATE CHARGE: [X] If any payment is not paid in full within __7__ days after its due date, I will be charged __5.00__ % of the _entire_ amount of the payment, but not more than $ _N/A_ or less than $ _10.00_. **You will pay a late charge only if 1/2 or more of the payment is late.**

[ ] If any payment is not paid in full within _____ days after its due date, I will be charged $ _____ if the entire scheduled payment exceeds $ _____ or $ _____ if the entire scheduled payment is $ _____ or less.

PREPAYMENT: If I pay off early:

[X] I may   [ ] I will not   have to pay a penalty or minimum charge.

[ ] I may   [X] I will not   get a refund or credit of part of the finance charge.

SECURITY: I am giving Lender a security interest in:

[X] Real estate located at: 3928 SOUTHERN PRKY AND 4218 TAYLOR BLVD
LOUISVILLE, KY 40214   LOUISVILLE, KY 40215

[ ] Motor Vehicles

| Year | Make | Model | Vehicle Identification No. |
|---|---|---|---|
| | | | |
| | | | |

[ ] Other Assets

| Other Assets Description |
|---|
| |

[ ] Household items described on the Personal Property Appraisal Form, which I have signed and which has been delivered to me with this Agreement.

ASSUMPTION: Someone buying my home, if it secures this loan, may not assume the remainder of this loan on the original terms unless approved by Lender.

[ ] My loan contains a variable-rate feature. Disclosures about the variable-rate feature have been provided to me earlier.

See the remainder of this Agreement for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties, if any.

### THIS AGREEMENT IS SUBJECT TO THE FEDERAL ARBITRATION ACT.

By signing below, I acknowledge receipt of a copy of this Federal Disclosure Statement.

_____
Borrower

_____
Co-Borrower

**SEE REVERSE SIDE FOR ADDITIONAL DISCLOSURES**

Amounts paid to others on my behalf

| | | | |
|---|---|---|---|
| 1. | $ NONE | | PAID TO |
| 2. | $ NONE | | PAID TO |
| 3. | $ NONE | | PAID TO |
| 4. | $ NONE | | PAID TO, |
| 5. | $ NONE | | PAID TO |
| 6. | $ 270.00 | Title Examination Fee | PAID TO GUARDIAN TITLE CORP |
| 7. | $ NONE | | PAID TO |
| 8. | $ 350.00 | Appraisal Fee | PAID TO FIRST TITLE CO |
| 9. | $ NONE | | PAID TO |
| 10. | $ NONE | | PAID TO |
| 11. | $ NONE | | PAID TO |
| 12. | $ NONE | | PAID TO |
| 13. | $ 326.55 | Title Insurance Fee | PAID TO GUARDIAN TITLE CORP |
| 14. | $ NONE | | PAID TO |
| 15. | $ NONE | | PAID TO |
| 16. | $ 143.00 | Recording/Releasing Fees RE | PAID TO GOVERNMENT AGENCY |
| 17. | $ NONE | | PAID TO |
| 18. | $ NONE | | PAID TO |
| 19. | $ NONE | | PAID TO |
| 20. | $ NONE | | PAID TO |
| 21. | $ 48259.69 | | PAID TO ROBERT G HUMPHREY AND AMERICAN GENERAL |
| 22. | $ 92000.00 | | PAID TO ROBERT G HUMPHREY AND GUARDIAN TITLE |
| 23. | $ | | PAID TO |
| 24. | $ | | PAID TO |
| 25. | $ | | PAID TO |
| 26. | $ | | PAID TO |
| 27. | $ | | PAID TO |
| 28. | $ | | PAID TO |
| 29. | $ | | PAID TO |
| 30. | $ | | PAID TO |
| 31. | $ | | PAID TO |
| 32. | $ | | PAID TO |
| 33. | $ | | PAID TO |
| 34. | $ | | PAID TO |
| 35. | $ | | PAID TO |
| 36. | $ | | PAID TO |
| 37. | $ | | PAID TO |
| 38. | $ | | PAID TO |
| 39. | $ | | PAID TO |
| 40. | $ | | PAID TO |
| 41. | $ | | PAID TO |
| 42. | $ | | PAID TO |
| 43. | $ | | PAID TO |
| 44. | $ | | PAID TO |
| 45. | $ | | PAID TO |

Amount Paid on Prior Account with Lender

| | | |
|---|---|---|
| 46. | $ NONE | |

Amounts Paid to me

| | | |
|---|---|---|
| 47. | $ | PAID TO |
| 48. | $ | PAID TO |
| 49. | $ | PAID TO |
| 50. | $ | PAID TO |
| 51. | $ | PAID TO |
| 52. | $ | PAID TO |
| 53. | $ | PAID TO |
| 54. | $ | PAID TO |
| 55. | $ | PAID TO |
| 56. | $ | PAID TO |

$ 141349.24 Amount Financed (Sum of lines 1 - 56)

$ 5219.00 Prepaid Finance Charges (itemized below)

## PREPAID FINANCE CHARGES

| | | | |
|---|---|---|---|
| 1. | $ 4600.00 | Points | PAID TO LENDER |
| 2. | $ NONE | | PAID TO |
| 3. | $ 560.00 | Broker's Fee | PAID TO GUARDIAN TITLE CORP |
| 4. | $ NONE | | PAID TO |
| 5. | $ NONE | | PAID TO |
| 6. | $ NONE | | PAID TO |
| 7. | $ NONE | | PAID TO |
| 8. | $ NONE | | PAID TO |
| 9. | $ NONE | | PAID TO |
| 10. | $ NONE | | PAID TO |
| 11. | $ NONE | | PAID TO |
| 12. | $ NONE | | PAID TO |
| 13. | $ NONE | | PAID TO |
| 14. | $ NONE | | PAID TO |
| 15. | $ 59.00 | Tax Service Fee | PAID TO ZC Sterling |

**SEE NEXT PAGE FOR IMPORTANT INFORMATION**

UNAA92 (01-15-08) Agreement (1-2)

Initials _____

MB10306PG0895

# AMERICAN GENERAL
### FINANCIAL SERVICES

This instrument prepared by _See exhibit "A"_ of _____ Ky.,
(NAME)                                  (ADDRESS)

Signed _____

**This Mortgage** made and entered into this 18TH day of _____ SEPTEMBER ____ 2006 , between
_____ ROBERT GENE HUMPHREY, UNMARRIED _____
of the City of _____ LOUISVILLE _____ County of _____ JEFFERSON ____,
Kentucky, hereinafter called the mortgagor, and American General Home Equity, Inc.,
_9104 TAYLORSVILLE RD   LOUISVILLE, KY 40299_____, Kentucky, hereinafter
called the mortgagee.

WITNESSETH: That for the purpose of securing the payment of the indebtedness herein mentioned and securing the fulfillment of all the covenants and conditions hereinafter set forth, the mortgagor hereby conveys to the mortgagee with covenant of GENERAL WARRANTY, the fee simple estate in the following described tract of land situated in _____ JEFFERSON _____ County, Kentucky, described as follows, to wit:

SEE EXHIBIT "A"

together with the buildings and improvements thereon, the rents, issues and profits therefrom and the rights-of-way, roads, ways, waters, privileges, appurtenances and advantages thereto belonging or in any wise appertaining, including window shades, storm and screen windows and doors, heating, lighting, plumbing, refrigerating and all other fixtures and appliances attached to or used in connection therewith or appurtenant to said freehold, being the same (or a part of the same) land conveyed by

017-00101 KYB451 (8-3-01) Mortgage Real Estate Loans Over $15,000

MB 1030 6 PG 0896

_____ to
_____ ' by
deed dated _____ and recorded in deed book _____ page _____ in the office of the
_____ County Clerk, Kentucky

(or _____
describe next immediate source of title e.g. will, inheritance, etc., in detail

_____
_____
_____

WHEREAS, under the conditions of this mortgage the mortgagor is justly indebted to the mortgagee for borrowed money in the principal sum of ONE HUNDRED FORTY-SIX THOUSAND FIVE HUNDRED SIXTY-EIGHT DOLLARS AND 24/100 DOLLARS ($ 146,568.24 ) and as evidence thereof, the mortgagor has executed and delivered his promissory note of even date herewith to the mortgagee for such sum payable ___240___ months after date with interest, all as therein set forth.

If this mortgage is subject and subordinate to another mortgage, it is hereby expressly agreed that should any default be made in the payment of any installment of principal or of interest on said prior mortgage, the holder of this mortgage may pay such installment of principal or such interest and the amount so paid with legal interest thereon from the time of such payment may be added to the indebtedness secured by this mortgage and the accompanying note shall be deemed to be secured by this mortgage, and it is further expressly agreed that in the event of such default or should any suit be commenced to foreclose said prior mortgage then the amount secured by this mortgage and the accompanying note shall become and be due and payable at any time thereafter at the sole option of the owner or holder of this mortgage.

The mortgagor warrants the title to said real estate and covenants that he has good right to mortgage and convey the same; that the same is free from all encumbrances, liens, claims or charges prior to or on equality with this mortgage; that the mortgagor has a good and perfect title to the same and that this mortgage is and shall be a first and superior lien against said real estate, unless otherwise hereafter set forth in writing, to-wit:

It is agreed and understood that the lien created herein is a second lien to that in favor of _____ as of record in Mortgage Book _____, at page _____, and that in the event of the payment of the lien aforesaid, the lien created hereunder shall become a first lien on the said property and the mortgagors further agree that in the event they should become delinquent in the payment of the first lien on said property and that suit or foreclosure proceedings be instituted by the first lien holder, then and in that event the lien herein created shall become due and payable in its entirety at the option of the mortgagee.

And the mortgagor, in order to more fully protect the security of this mortgage, covenants and agrees as follows:

1. That he will pay the note(s) hereby secured according to terms.

2. That he will pay all taxes, assessments, charges and liens which are or may be imposed by law upon the mortgaged premises or any part thereof (including assessments for construction or improvement of streets, sidewalks, alleys, fire hydrants and other public utilities) and deliver or exhibit receipt therefor to the mortgagee at least 15 days before same shall become delinquent.

3. That he will, at least 15 days before the expiration of any policy for insurance hereinafter in paragraph 4 provided for, deliver or exhibit to the mortgagee a receipt for the premium for a proper renewal policy therefor.

4. To keep improvements on the mortgaged premises in good condition and repair and to keep the same insured in some Company of Companies to be approved by the mortgagee, against any loss by fire, extended coverage, vandalism and malicious mischief as may be required by the mortgagee, in form and amounts satisfactory to mortgagee, not to exceed the value of improvements, and to cause the policy or policies therefor to be properly assigned to or made payable to the mortgagee for its benefit as collateral

017-00101 KYB452 (8-3-01) Mortgage Real Estate Loans Over $15,000

security for the payment of said note(s) and interest thereon. All such policies shall be deposited with the mortgagee and in the event of the damage or destruction of the premises by fire, tornado or other hazard against which insurance is held as hereinbefore provided, the mortgagee shall collect the proceeds of such policies and may, at its option, apply the same to the payment of said indebtedness or to the repair or replacement of such premises so damaged or destroyed.

5. Should the mortgagor fail to maintain such insurance or to keep the policy or policies therefor deposited with the mortgagee, or to pay the cost thereof, or to pay such taxes and assessments and to deliver or exhibit to the mortgagee as provided in paragraph 2 or paragraph 3 hereof any receipt therein referred to, the mortgagee may at mortgagee's option procure and pay for such insurance or pay such taxes or assessments, and the money paid therefor by the mortgagee with interest thereon at the rate and such sum shall be added to the balance of the debt secured hereby and the payment of the same shall be secured by this mortgage and the lien therefor shall be deemed equal in dignity to the lien securing the other indebtedness hereby secured.

6. Should the mortgagor fail: (a) to pay any installment on said note or interest thereon when the same becomes due; or (b) to pay such taxes or assessments when same become due; or (c) to keep said premises insured against loss by fire, extended coverage, vandalism, and malicious mischief which may be required by the mortgagee, or to pay the premiums for such insurance when same become due; or (d) to keep said premises in good condition and repair; or (e) to keep or perform any covenant or stipulation of this mortgage; then and in any of such events and if the default is not made good prior to the due date of the next monthly payment, the mortgagee may declare the whole indebtedness secured hereby to be at once due and payable, and may forthwith proceed to collect the same and to enforce this mortgage by suit or otherwise; and in any of such cases the mortgagee may enter on the mortgaged premises, collect the rents, issues and profits thereof, and after paying all expenses of such collections, and a reasonable compensation for services, shall apply the money collected to the satisfaction of the debts and demands hereby secured. In any of such events of default herein mentioned the mortgagee shall upon application to any court of competent jurisdiction be entitled to the appointment of a Receiver of the mortgaged premises to manage the same and to collect the rents, issues and profits therefrom, and after deduction of the costs and expenses of such receivership and a reasonable compensation for services, shall apply the remainder of such rents, issues and profits so received to the payment of the mortgaged indebtedness. Provided, however, that the mortgagee shall not be entitled to the appointment of a Receiver under this clause if the mortgagor occupies the mortgaged premises as a home and shall pay to the mortgagee a reasonable rental for such premises pending foreclosure of this mortgage. It is further agreed that the grounds for the appointment of a Receiver herein set out shall be in addition to and not in limitation of the Statutory remedy of receivership and may be invoked either in aid of or without proceeding for the foreclosure and sale of the mortgaged premises.

7. This mortgage shall also secure the payment of all renewals and renewal notes hereof, together with all extensions thereof, and this mortgage shall in addition secure any future advances by the mortgagee to the mortgagors, as evidenced from time to time by a promissory note or notes, together with interest thereon, but in no event shall said indebtedness exceed $_____. The mortgagors for themselves, their heirs, personal representatives and assigns, covenant and agree to pay said note and interest as they become due and to repay such further advances, if any, with interest thereon as provided in the note or notes evidencing such advances.

Should the mortgagor pay the indebtedness and perform all the covenants and stipulations hereof, the mortgagee shall cancel the note hereby secured, and shall release this mortgage on the request and at the cost of the mortgagor.

Mortgagor agrees not to violate, nor allow the violation of any federal or state (or subdivision thereof) environmental, health or safety law, regulation or ordinance, affecting said real property. Any such violation shall be deemed a default and Mortgagor agrees to indemnify, defend and hold Mortgagee harmless against any and all damages directly or indirectly caused by such violation, including but not limited to clean up costs, attorney fees and costs, and that said claims, damages and costs shall be deemed additional sums due under the Mortgage indebtedness set forth in the Note executed in conjunction herewith.

017-00101 KYB453 (6-3-01) Mortgage Real Estate Loans Over $15,000

HB103030760898

If not prohibited by law or regulation, this mortgage and all sums hereby secured shall become due and payable at the option of the mortgagee and without notice to mortgagor forthwith upon the conveyance of mortgagor's title to all or any portion of said mortgaged property and premises, or upon the vesting of such title in any manner in persons or entities other than, or with, mortgagor unless the purchaser or transferee assumes the indebtedness secured hereby with the consent of the mortgagee.

The covenants herein contained shall bind, and the benefits and advantages shall inure to, the respective heirs, executors, administrators, successors and assigns of the parties hereto, and wherever used, the singular number shall include the plural, the plural the singular, and the use of any gender shall include all genders.

WITNESS the signature of the mortgagor this the date first herein written.

ROBERT GENE HUMPHREY

STATE OF ___KENTUCKY___

COUNTY OF ___JEFFERSON___      SS

I, a Notary Public, within and for the State and County aforesaid, do hereby certify that the foregoing instrument of writing was this day produced to me, in my office in said State and County by ___ROBERT GENE HUMPHREY, UNMARRIED___

part __Y__ _____ thereto, and was acknowledged and delivered by ___HIM___ to be ___HIS___ act and deed.

Witness my/our signature(s) and seal(s) this 18TH day of ___SEPTEMBER___ ___2006___

My commission expires ___6-2-08___      _____
                                          Notary Public

---

**MORTGAGE**

FROM

TO

AMERICAN GENERAL HOME EQUITY, INC.

, KENTUCKY

Received for record this _____

day of _____

at _____ o'clock _____ m., and recorded

in Mortgage Record No. _____ Page _____

In the office of the County Clerk, Kentucky

Fee $ _____

017-00101 KYB454 (6-3-01) Mortgage Real Estate Loans Over $15,000

ATTACH ONLY THIS PROPERTY DESCRIPTION TO THE MORTGAGE.

IMPORTANT—DO NOT DELETE OR DETACH THE INFORMATION ABOVE THIS LINE

### EXHIBIT "A"

BEGINNING on the West side of Southern Parkway (formerly Grand Blvd.) 200 feet South of Kenton Street; thence running Southwardly along the West side of Southern Parkway 38 feet 6 inches, and extending back Westwardly of that same width between lines parallel with Kenton Street, 200 feet to an alley, and being the Northern 38 feet 6 inches of Lot 5, Block 4 of the Oakdale Addition, as recorded in Deed Book 351, Page 640, and Plat Book 6, Pages 62 and 63, all in the Office of the Jefferson County Court Clerk.

BEING the same property conveyed to ROBERT GENE HUMPHREY, by Deed dated 2-16-88, of record in Deed Book 5749, Page 540, in the Office of the County Court Clerk of Jefferson County, Kentucky.

AND BEING the same property conveyed to ROBERT GENE HUMPHREY and ROBERT HUMPHREY, son and father, by Deed dated 9-10-75, of record in Deed Book 4809, Page 216, in the Office of the County Court Clerk of Jefferson County, Kentucky.

**TAX ID NUMBER: 11-052C-0213-0000**

BEGINNING on the Northwest corner of Taylor Boulevard and Short Avenue; thence Westwardly with the North line of Short Avenue 166 feet to an alley 15 feet wide; thence Northwardly with the East line of said alley 50 feet; thence Eastwardly and parallel with Short Avenue 150 feet, more or less, to the West line of Taylor Boulevard; thence Southwardly with the West line of Taylor Boulevard to the point of beginning. This being Lot No. 3 and the Southern Portion of Lot 2 as shown on the Amended Plat of Auburn Heights, as recorded in Plat Book 2, Page 238, in the Office of the County Court Clerk of Jefferson County, Kentucky.

And being the same property conveyed to ROBERT HUMPHREY by Deed dated _Sept 18_, 2006, and recorded in Deed Book _8706_, page _495_ in the Office of the County Court Clerk of Jefferson County, Kentucky.

**TAX ID NUMBER: 11-067A-0072-0000**

_Robert G Humphrey_
_____
MORTGAGOR

_____
MORTGAGOR

THIS INSTRUMENT PREPARED BY:

_Laurence Abrams_

LAWRENCE K. ABRAMS
ATTORNEY AT LAW
HANOVER PLACE
4500 BOWLING BLVD., SUITE 150
LOUISVILLE, KY 40207
(502) 895.3192

Document No.: DN2006150916
Lodged By: guardian title
Recorded On: 09/21/2006    09:45:03
Total Fees:    22.00
Transfer Tax:    .00
Deputy Clerk: CANHAR   BOBBIE HOLSCLAW-JEFF CO KY

RECORD AND RETURN TO:

**GUARDIAN TITLE CORP.**
**4500 BOWLING BLVD., SUITE 150**
**LOUISVILLE, KY 40207**

### END OF DOCUMENT

When Recorded Return To:
MorEquity Incorporated
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

**MorEquity L#:** ███████

# ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **SPRINGLEAF HOME EQUITY, INC., FORMERLY KNOWN AS AMERICAN GENERAL HOME EQUITY, INC., A WEST VIRGINIA CORPORATION, WHOSE ADDRESS IS 601 N.W. Second St., EVANSVILLE, IN, 47708, (ASSIGNOR)**, by these presents does convey, grant, sell, assign, transfer and set over the described mortgage together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to: DLJ MORTGAGE CAPITAL, INC.
C/O SELECT PORTFOLIO **, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE)**.
SERVICING, INC., 3815 SOUTH WEST TEMPLE, SALT LAKE CITY, UT*
Said mortgage was executed by **ROBERT GENE HUMPHREY** to **AMERICAN GENERAL HOME EQUITY, INC.** and recorded in Book 10306, Page 0895, or Instrument # DN2006150916 in the office of the Clerk of JEFFERSON County, Kentucky.  *84115

Property commonly known as: 3928 SOUTHERN PRKY    LOUISVILLE, KY 40214

IN WITNESS WHEREOF, the undersigned has hereunto set its corporate hand by its proper officers, they being thereto duly authorized this 30th day of June in the year 2011.

**SPRINGLEAF HOME EQUITY, INC., FORMERLY KNOWN AS AMERICAN GENERAL HOME EQUITY, INC.**

By: _____
   **MARY D. SARMIENTO**
   its **VICE PRESIDENT**

Attest: _____
   **DERRICK WHITE**
   its **ASST. SECRETARY**

STATE OF FLORIDA    COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me this 30th day of June in the year 2011, by MARY D. SARMIENTO and DERRICK WHITE as VICE PRESIDENT and ASST. SECRETARY, respectively for SPRINGLEAF HOME EQUITY, INC., FORMERLY KNOWN AS AMERICAN GENERAL HOME EQUITY, INC., who, as such VICE PRESIDENT and ASST. SECRETARY, respectively being authorized so to do, executed the foregoing instrument for the purposes therein contained. He/she/they is/are personally known to me.

_____
MIRANDA AVILA
Notary Public - State of FLORIDA
Commission expires: 08/22/2014

Notary Public, State of Florida
Miranda Avila
My Commission  EE019063
Expires 08/22/2014

Document Prepared By: _____

E. Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

Recording Requested By:
SELECT PORTFOLIO SERVICING, INC.

When Recorded Return To:

SELECT PORTFOLIO SERVICING, INC.
3815 SOUTH WEST TEMPLE
SALT LAKE CITY, UT  84115

---

## CORPORATE ASSIGNMENT OF MORTGAGE

Jefferson, Kentucky   REFERENCE # ▮▮▮▮▮▮   "HUMPHREY"
INVESTOR #:
Assignment Prepared on: May 22nd, 2015.

Assignor: DLJ MORTGAGE CAPITAL, INC. BY SELECT PORTFOLIO SERVICING, INC. AS ITS ATTORNEY IN FACT at c/o SELECT PORTFOLIO SERVICING, INC., 3815 SOUTH WEST TEMPLE, SALT LAKE CITY, UT  84115.
Assignee: WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE FOR CARLSBAD FUNDING MORTGAGE TRUST  at  500 DELAWARE AVENUE, 11TH FLOOR, WILMINGTON, DE  19801.

Executed By: ROBERT GENE HUMPHREY, UNMARRIED  To: AMERICAN GENERAL HOME EQUITY, INC.
Date of Mortgage: 09/18/2006 Recorded:  09/21/2006  in Book/Reel/Liber: 10306 Page/Folio: 0895 as Instrument No.: DN2006150916  In Jefferson County , State of Kentucky.

Property Address: 3928 SOUTHERN PRKY, LOUISVILLE, KY  40214

Legal:  SECOND PROPERTY ADDRESS: 4218 TAYLOR BLVD   LOUISVILLE, KY 40215

   KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN AND NO/100ths DOLLARS and other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $146,568.24 with interest, secured thereby, together with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and also the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

DLJ MORTGAGE CAPITAL, INC. BY SELECT PORTFOLIO SERVICING, INC. AS ITS ATTORNEY IN FACT
On  MAY 2 2 2015

By: _____
        Suzanne Johnstone
        Document Control Officer

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

STATE OF UTAH
COUNTY OF SALT LAKE

On __MAY 2 2 2015__ , before me, _Greg Kulicke_____, a Notary Public in and for SALT LAKE in the State of UTAH, personally appeared _____Suzanne Johnstone____ , _Document Control Officer_ DLJ MORTGAGE CAPITAL, INC. BY SELECT PORTFOLIO SERVICING, INC. AS ITS ATTORNEY IN FACT, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

Notary Expires: 1/28/19

**GREG KULICKE**
Notary Public  State of Utah
My Commission Expires on:
**January 28, 2019**
Comm. Number: 681583

(This area for notarial seal)

Document Prepared By: _____
BILL KOCH,,  SELECT PORTFOLIO SERVICING, INC. 3815 SOUTH WEST TEMPLE, SALT LAKE CITY, UT  84115

**JEFFERSON COUNTY PVA**                                    EXHIBIT B

---

**3928 SOUTHERN PKWY**

| | |
|---|---|
| **Owner** | HUMPHREY ROBERT G |
| **Parcel ID** | 052C02130000 |
| **Assessed Value** | 101,410 |
| **Acres** | 0.1748 |
| **Neighborhood** | 14 / COM CHURCHILL/KY FAIRGROUNDS |

to get more detailed property information.

Property is assessed per KRS 132.20 on January 1st of each year. The current year assessments are updated and posted on the website in mid April. Information deemed reliable but not guaranteed. Data last updated: 06/24/2015.

Case 14-32066-acs    Doc 38-1    Filed 11/10/15    Entered 11/10/15 15:49:19    Page 27
of 27

## JEFFERSON COUNTY PVA

**4218 TAYLOR BLVD**

| | |
|---|---|
| **Owner** | HUMPHREY ROBERT |
| **Parcel ID** | 067A00720000 |
| **Assessed Value** | 117,860 |
| **Acres** | 0.1783 |
| **Neighborhood** | 501183 / IROQUOIS NORTH |

to get more detailed property information.

Property is assessed per KRS 132.20 on January 1st of each year. The current year assessments are updated and posted on the website in mid April. Information deemed reliable but not guaranteed. Data last updated: 06/24/2015.